IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>STEVEN ACOSTA,<br><br>　　　　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br>Case No. 2:17-CR-600 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Steven Acosta's Motion to Suppress. For the reasons discussed below, the Court will deny the Motion.

I. BACKGROUND

On the night September 22, 2017, Officer Brennon Peterson, an officer with the Cedar City Police Department, observed a tow truck driving without its taillights on. Officer Peterson pulled behind the vehicle, followed it for a period of time, and ran its license plate through his computer. The license plate came back for an Audi passenger car, not a tow truck. Officer Peterson then ran the license plate through dispatch for verification and it again returned as belonging to an Audi. Having followed the vehicle for five or six blocks, Officer Peterson activated his lights and initiated a traffic stop. As will be discussed further below, Officer Peterson's vehicle was equipped with a dash cam, but the stop was not recorded.

Officer Peterson approached the vehicle, which had two occupants. Officer Peterson engaged with Defendant Acosta, who was the driver of the vehicle. Officer Peterson asked Mr. Acosta about the license plate and Mr. Acosta stated that it belonged to the tow truck. Officer

1

Peterson disagreed and asked Mr. Acosta to step out of the vehicle. Officer Peterson wanted to run the VIN, but could not see the VIN in the doorjamb without opening the door. Officer Peterson asked Mr. Acosta to step out of the vehicle for safety reasons and had him stand behind the door. Officer Peterson relayed the VIN to dispatch. After doing so, dispatch reported that the registration was expired and that the vehicle did not have insurance. Based on the lack of insurance, the tow truck would have been impounded.

While Officer Peterson was examining the VIN, he saw a box of 9mm ammunition on the floor of the driver's side of the vehicle. Officer Peterson asked Mr. Acosta if there was a firearm in the vehicle and Mr. Acosta stated that there was a firearm under the driver's seat. Officer Peterson leaned in to verify that there was a firearm.

Officer Peterson then asked Mr. Acosta if he had any felony convictions. Mr. Acosta stated that he did. Officer Peterson asked dispatch to confirm Mr. Acosta's criminal history. Dispatch confirmed that Mr. Acosta did have felony convictions. Mr. Acosta was then arrested for being a felon in possession of a firearm.

After back-up arrived, Officer Peterson went to seize the firearm and remove any ammunition from it. While emptying the firearm, he detected an odor of marijuana. Officer Peterson asked Mr. Acosta if there were any drugs in the vehicle and Mr. Acosta stated that there were not. Officer Peterson then observed a glass pipe in the vehicle and Officer Peterson advised Mr. Acosta of his *Miranda* rights. Mr. Acosta agreed to speak to Officer Peterson and admitted that the glass pipe was his.

At this point, a back-up officer, Officer Bergstrom, conducted a further search of the vehicle. Officer Bergstrom found a blue tube with a substance consistent with marijuana. He

also found a black bag with a substance consistent with the appearance of methamphetamine. In addition, Officer Bergstrom found a flashlight-Taser, a knife, digital scales, prescription pills, and over $200 in cash.

Mr. Acosta was placed in Officer Peterson's patrol car. Upon questioning, Mr. Acosta stated that he was unaware of the black bag or its contents, but did state that the firearm belonged to his wife. The passenger of the vehicle, also a convicted felon, was allowed to leave after the conclusion of the stop.

## II. DISCUSSION

Defendant raises three issues in his Motion. First, Defendant argues that evidence should be suppressed based on the government's failure preserve evidence. Second, Defendant challenges his removal from the vehicle so that Officer Peterson could check the VIN. Third, Defendant seeks dismissal based on a violation of the Equal Protection clause.

A.     PRESERVATION OF EVIDENCE

Mr. Acosta first argues that the failure of Officer Peterson to record the stop on his dash cam should warrant suppression. Officer Peterson's vehicle was equipped with a dash cam. However, at the hearing, Officer Peterson testified that the stop at issue here was not recorded because his dash cam had run out of memory. Officer Peterson testified that, generally, officers turn in their memory card every two hours to have the data uploaded, which clears the card. Officer Peterson had not done this. Had the dash cam been functioning, it would have recorded the stop, including a thirty second period prior to when the officer activated the lights.

The Due Process clause requires "that criminal defendants be afforded a meaningful opportunity to present a complete defense."[1] To protect this right, the Supreme Court "has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'"[2] "[T]he government violates a defendant's right to due process when: (1) it destroys evidence whose exculpatory significance is apparent before destruction; and (2) the defendant remains unable to obtain comparable evidence by other reasonably available means."[3] "[I]f the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence."[4]

Defendant bears the burden of showing that the unpreserved evidence "might be expected to play a significant role in the suspect's defense."[5] Defendant has failed to show that the dash cam would have yielded such evidence. Defendant argues that it would have helped with the determination of whether the taillights were working when the stop was initiated. However, the camera would have only recorded thirty seconds prior to when the officer activated his lights. Officer Peterson testified that he followed the vehicle for five or six blocks after noticing the non-functioning taillights before initiating the stop. Therefore, it is unlikely that the video would have shown whether the taillights were functioning at the time Officer Peterson first encountered

---

[1] *California v. Trombetta*, 467 U.S. 479, 485 (1984).

[2] *Id.* (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)).

[3] *United States v. Bohl*, 25 F.3d 904, 909–10 (10th Cir. 1994) (internal quotation marks omitted).

[4] *Id.* at 910.

[5] *United States v. Harry*, 816 F.3d 1268, 1276 (10th Cir. 2016) (quoting *Trombetta*, 467 U.S. at 488).

the vehicle. Moreover, by the time he initiated the stop, Officer Peterson had an additional justification to initiate the stop. The license plate did not match the tow truck. Under Utah law, it is unlawful "to place or display any license plate or registration card upon any other vehicle than the one for which it was issued by the division."[6] Thus, even if Officer Peterson lacked reasonable suspicion for the stop at the time he first encountered the tow truck, reasonable suspicion sufficient to justify the stop had developed prior to the initiation of the stop.

Further, other comparable evidence was available. At the evidentiary hearing, Defendant presented the testimony of the passenger in the vehicle that night. The passenger testified that he believed the taillights were working, in contradiction to Officer Peterson's testimony. Thus, the dash cam video was not "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[7] While video evidence would be helpful in resolving the dispute between Officer Peterson and the passenger, it is ultimately unnecessary. As stated, Officer Peterson had an alternative justification, supported by reasonable suspicion, to justify the stop. Therefore, even if the taillights were functioning, reasonable suspicion justified the stop. As a result, Defendant has failed to demonstrate that this evidence is material. Thus, the Court must determine whether the government acted in bad faith.

The Tenth Circuit has identified five factors to consider in determining whether the government acted in bad faith: (1) the government had been explicitly placed on notice that defendant believed the evidence to be exculpatory; (2) defendant's assertion that the evidence was potentially exculpatory was supported with objective, independent evidence and was not

---

[6] Utah Code Ann. § 41–1a–1305(3).

[7] *Trombetta*, 467 U.S. at 489.

merely conclusory; (3) the government still had the evidence within its control when it received notice from the defendant about the evidence's exculpatory value; (4) the evidence disposed of was central to the government's case; and (5) the government offered no innocent explanation for its failure to preserve the evidence.[8]

Considering these factors, the Court finds that Defendant has failed to demonstrate that the government acted in bad faith. First, there is no evidence that the government had been placed on notice that Defendant believed the evidence was exculpatory. The dash cam recording was never created. Therefore, there was no basis for anyone to believe it would contain exculpatory evidence.

Second, there is some evidence to support Defendant's assertion that a dash cam video would have contained exculpatory evidence. As stated, the passenger testified that he believed that taillights were working. The dash cam video could have supported his testimony. However, the passenger's subjective belief that the taillights were functioning is not objective evidence and is merely conclusory.

Third, the government never had the dash cam video. Thus, it did not ever have the evidence within its control.

Fourth, the evidence is not central to the government's case. Defendant argues that the evidence is central to the suppression issue because the entire reason for the stop was Officer Peterson's allegation that the taillights were out. However, while the lack of taillights was what initially drew Officer Peterson's attention, the stop was also conducted because the rear license plate did not match the vehicle. Thus, Officer Peterson had probable cause to stop the vehicle

---

[8] *Bohl*, 25 F.3d at 911–12.

even without the taillight concerns. Further, as will be discussed, the tow truck would have been impounded and an inventory search conducted because of the lack of insurance. Therefore, the dash cam video is not central to the case or the resolution of this Motion.

Finally, the government has offered an innocent explanation for the failure to record the stop. Officer Peterson testified that he failed to upload the memory card on his camera and was unaware that the stop had not been recorded until he was transporting Mr. Acosta to the Iron County Jail. Defendant argues that the government has not offered an innocent explanation, "merely testimony that this video was not created through the negligence of the Officer."[9] However, "mere negligence on the government's part in failing to preserve such evidence is inadequate for a showing of bad faith."[10] Moreover, there is evidence that Officer Peterson believed the dash cam was functioning. For instance, Officer Peterson positioned his patrol car in such a way as to record the stop and questioned Defendant in front of his patrol car so that it would be recorded. It is difficult to believe that he would do these things if he intended to not record the encounter. Considering all these factors, the Court finds that there is no evidence of bad faith. Therefore, suppression is not warranted.

B.  REMOVAL FROM THE VEHICLE

Defendant also challenges his removal from the vehicle to obtain the VIN from the doorjamb without first checking the front license plate. As set forth above, Officer Peterson asked Defendant to step out of the vehicle so that he could examine the VIN in the doorjamb.

---

[9] Docket No. 44, at 7.
[10] *Bohl*, 25 F.3d at 912.

Before doing so, Officer Peterson did not first check the front license plate, which it was later determined matched the tow truck.

Even assuming such conduct violated Defendant's Fourth Amendment rights, pursuant to Utah state law and Cedar City Police Department policy, the vehicle would have been impounded due to lack of insurance and an inventory search would have been conducted. Thus, the firearm, ammunition, and drugs would have inevitably been discovered during an inventory search. "[I]f evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible."[11] Thus, even if removing Defendant from the vehicle was unlawful, suppression is not required, as Defendant correctly concedes.

C.  EQUAL PROTECTION

Defendant's final argument is that this case should be dismissed on Equal Protection grounds. The Court interprets this as a selective prosecution claim. "In order to prevail on a claim of selective prosecution, a defendant must show that 'he has been singled out for prosecution while others similarly situated generally have not been proceeded against for the type of conduct forming the basis of the charge against him.'"[12] Additionally, Defendant must demonstrate "that the Government's selection of him for prosecution was invidious or in bad faith and was based on impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights."[13] Absent such a showing, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by

---

[11] *United States v. Ibarra*, 955 F.2d 1405, 1410 (10th Cir. 1992).

[12] *United States v. Furman*, 31 F.3d 1034, 1037 (10th Cir. 1994) (quoting *United States v. Salazar*, 720 F.2d 1482, 1487 (10th Cir. 1983)).

[13] *Salazar*, 720 F.2d at 1487.

statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."[14]

Here, Defendant complains that he was charged while his passenger—who was also a convicted felon and also had access to the firearm, ammunition, and controlled substances—was allowed to leave. Defendant has failed to show that he and the passenger were similarly situated. The firearm and ammunition were found near the driver's seat where Defendant was sitting and he admitted knowledge the firearm. Other than the fact that he was in the vehicle, there appears to be no evidence linking the passenger to the firearm and ammunition. Defendant further admitted to possessing a glass pipe. Even though the black bag with the drugs was found in the center of the floorboard, there was evidence linking Defendant to drug paraphernalia, which provided some link to the drugs. In contrast, the passenger denied any knowledge of the bag or its contents.

Even assuming that Defendant and his passenger were similarly situated, Defendant has failed to show that the government's prosecution of him was invidious, in bad faith, or based on an impermissible consideration. Rather, it appears that the government pursued prosecution against Mr. Acosta because it believed it had a stronger case against him than it did against the passenger. This is not a basis for dismissal. After all, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation."[15]

---

[14] *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

[15] *Oyler v. Boles*, 368 U.S. 448, 456 (1962).

## III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 31) is DENIED.  The time from the filing of the Motion to the date of this Order is excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D), (H).  The parties are directed to contact the Magistrate Judge to set this matter for further proceedings.

DATED this 21st day of June, 2018.

BY THE COURT:

Ted Stewart
United States District Judge